# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNY MELTON, | Case No.: 1:17-cv-01057-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Ronny Melton ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DBI") under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the

---
[1] The parties consented the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. Nos. 8, 10.)

1

record as a whole and is based on proper legal standards. Accordingly, the Court affirms the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for disability insurance benefits on February 13, 2014. AR 178-81.[2] Plaintiff alleged that he became disabled due to a speech impairment and because he was hard of hearing. AR 200. Plaintiff's application was denied initially and on reconsideration. AR 103-06, 110-14. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Judith Kopec held a hearing on January 13, 2016, and issued an order denying benefits on March 24, 2016. AR 24-36, 40-83. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### **Relevant Hearing Testimony**

The ALJ held a hearing on January 31, 2016, in Stockton, California. AR 40-83. Plaintiff appeared and was represented by his attorney, Jeffrey Milam. Impartial Vocational Expert Laurence Hughes also appeared. AR 42.

In response to questioning by the ALJ, Plaintiff testified that he has a driver's license and regularly drives. He has a high school diploma, but received special education classes and services. He spent his entire career as a truck driver, working for two companies. He last worked in 2011, when he got laid off. AR 45-47, 55. He testified that he is now unable to work because of pain in his legs, right hip and low back, which he rated as a constant 7 out of 10. AR 48-50.

When asked about daily activities, Plaintiff reported that he washes dishes, vacuums, and sweeps. During the day, he rides his exercise bike for two to three minutes, and will walk half of a mile to visit his mom. He also cooks and does yardwork, like raking and sweeping. For about two hours every day, he relaxes with an ice pack on his knees and elevating his legs. He also watches TV for about an hour each day and reads magazines. AR 50-53.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

When asked about his abilities, Plaintiff testified he can carry 10 to 20 pounds. He can walk 30 minutes, stand 30 to 60 minutes and sit 10 to 20 minutes. He cannot bend or kneel, but can crawl. AR 56-58.

When asked about his medications and treatment, Plaintiff testified that his medications make him groggy and constipated. He has problems with memory and concentration, forgetting things. He does not use a cane, but his doctor has recommended ice and heat for his knee and back problems. Plaintiff received injections, but they did not help. AR 54-55.

In response to questioning by his attorney, Plaintiff testified that he lies down to use a heating pad or ice every day. The doctor recommended that Plaintiff use heat or ice when needed. His most comfortable positions are sitting and walking. AR 59-62.

Following Plaintiff's testimony, the ALJ elicited testimony from the Vocational Expert ("VE"), Laurence Hughes. The ALJ asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual with Plaintiff's age, education and work experience, who can lift, carry, push or pull 25 pounds frequently, 50 pounds occasionally, cannot be exposed to unprotected heights, cannot climb ladders or scaffolds, must work in a moderate noise environment or quieter, and able to hear and communicate in one-one-conversation. The VE testified that this hypothetical individual could not perform any of Plaintiff's past jobs, but there is other work in the national economy that he could perform, such as vehicle cleaner, laundry worker II, and machine feeder. As a prophylactic measure, the VE would cut the job numbers in half because of the noise level. AR 65-66.

For the second hypothetical, the ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education and work experience who can frequently kneel, crouch, crawl and stoop, can sit, stand and walk, alternating to another position or duty for ten minutes every three hours, remaining on task and performing job duties throughout, cannot climb ladders or scaffolds, cannot be exposed to moving mechanical parts, can have only occasional public contact and must be in a moderate noise environment. The VE testified that this individual could perform the vehicle cleaner and laundry worker II jobs, but not the machine feeder. The ALJ would substitute a dining room attendant for that job, reducing the job numbers by half. AR 67-68.

For the third hypothetical, the ALJ asked the VE to assume a hypothetical individual with Plaintiff's age, education and work experience and the limitations in hypothetical two with the following changes: can lift, carry, push or pull 10 pounds frequently, 20 occasionally, can occasionally kneel, crouch, crawl or stoop, can sit, stand and walk for four hours each, alternating to another position for ten minutes after every one-half hour, must work in a quiet noise environment with no public contact, meaning no direct interaction but can work in close proximity and is off task up to 15% of the time. The VE testified that this individual could not perform any work. AR 68-69.

Following the ALJ's questioning, Plaintiff's counsel asked the VE whether it would be acceptable for the person in hypothetical two lie down for unscheduled breaks every three hours. The VE testified that it would not be acceptable if the person had to lie down for any appreciable amount of time. AR 70-71. In response to questions from Plaintiff's counsel, the VE clarified that all medium job cited in the hypotheticals require people to be on their fee more than six hours in a day. AR 71.

For the next hypothetical, Plaintiff's counsel asked the VE to consider the second hypothetical, but make one change to a quiet noise environment. The VE testified that this change would eliminate the jobs from hypothetical two and there would be no jobs. AR 72.

Following the VE's testimony, Plaintiff's wife, Veronica Snell, appeared and testified. Ms. Snell lives with Plaintiff and works a 40-hour week. On the weekends, during an eight-hour period, Plaintiff is sitting down three hours, and sitting or lying down for four of eight hours. The rest of the time he is standing or walking. AR 78. Ms. Snell also testified that Plaintiff has problems hearing or understanding, based on education, hearing and his upbringing. AR 80-81.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 27-36. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 22, 2011, his alleged onset date. AR 29. Further, the ALJ identified bilateral sensorineural hearing loss and lumbar

spine, left knee, and bilateral hip osteoarthrosis as severe impairments. AR 29-30. Nonetheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 30. Based on the record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, except that he could sit, stand and walk, alternating to another position or duty for 10 minute every 3 hours, remaining on task and performing job duties throughout, could not climb ladders, ropes or scaffolds, could frequently kneel, crawl, or stoop, could not be exposed to moving mechanical parts or unprotected heights, can have occasional public contact, which means he could be in proximity to the public, but could only have occasional interaction and communication with the public, could communicate in one-to-one conversation and could be in a moderate noise environment. AR 30-34. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 34-36. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 36.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff contends that ALJ failed to offer any legally sufficient reasoning to support the RFC finding, impermissibly making her own medical findings and failing to provide clear and convincing reasons to reject the limitations provided by Plaintiff's treating doctor, Dr. Mattice Harris. Plaintiff asserts that the proper remedy for these errors is to remand for further consideration.

The Commissioner counters that the ALJ properly assessed the RFC based on the entire medical record and provided good reasons for rejecting Dr. Harris' opinion. The Commissioner therefore requests that the Court uphold the Commissioner's final decision.

## **DISCUSSION**[3]

Plaintiff argues that the ALJ erred because the physical RFC did not reflect any particular physician's medical opinion. (Doc. 15 at 7.) This argument lacks merit.

"It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

6

in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). Indeed, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." *Holcomb v. Comm'r Soc. Sec.*, No. 2:17-cv-02268-KJM-CKD, 2019 WL 176266, at *4 (E.D. Cal. Jan. 11, 2019) (citing *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)).

Second, Plaintiff contends that the ALJ erred by making her own medical findings, and she "did not cite or rely upon medical evidence" to support the RFC finding, and offered only "minimal discussion as to how she arrived at the conclusion that Plaintiff was limited to medium work with postural, manipulative and environmental limitations." (Doc. 15 at 7, 8.) Plaintiff posits that the ALJ "apparently reviewed the treatment notes and MRI and translated it into functional limitations on [her] own," which was error. (*Id.* at 7-8). Plaintiff's arguments lack merit and are unsupported.

The ALJ's determination of a claimant's RFC must be based on the medical opinions and the totality of the record. 20 C.F.R. §§ 404.1527(d), 404.1546(c). Moreover, the ALJ is responsible for "'resolving conflicts in medical testimony, and for resolving ambiguities.'" *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b).

Here, the ALJ cited medical evidence and treatment records to support her RFC finding that Plaintiff could perform medium work. In so doing, the ALJ acknowledged Plaintiff's objective imaging records--limited to x-rays taken in June 2014, and not an MRI--which established degenerative changes in Plaintiff's left and right knees, mild degenerative changes in his hips, marked degenerative disc disease in Plaintiff's lumbar spine, and scattered facet generative arthritis of his spine. AR 32, 284, 285, 286, 290. Contrary to Plaintiff's suggestion, the ALJ did not interpret this raw medical data into functional terms. Instead, the ALJ cited and considered Plaintiff's treatment records that expressly reflected Plaintiff's functional abilities. For instance, the ALJ considered treatment records indicating that Plaintiff complained of pain in his back and lower extremities, but also reflected that Plaintiff "was able to continue ambulating without too much trouble." To support this determination, the ALJ cited, in part, Plaintiff's medical records from Dr. Robert E. Caton, an

orthopedic surgeon. AR 32 (citing Exhibits 4F and 5F). The ALJ's determination regarding Plaintiff's abilities is supported by substantial evidence.

In July 2014, Plaintiff first sought treatment with Dr. Caton, who reviewed x-rays showing degenerative changes in Plaintiff's knees. AR 270. Dr. Caton noted that "clinically the patient is still able to get around" and "walk[ed] with a fairly good gait." He also had "full extension of and full flexion." Dr. Caton prescribed anti-inflammatory medication. AR 270-71. In September 2014, Plaintiff again sought treatment for knee pain, but was noted to "still get[] around" though complaining of some pain and discomfort. He walked slowly, but was able to get on and off the examination table. However, it also was noted that Plaintiff had stopped taking his anti-inflammatory medication and declined injections. AR 268-69. In early March 2015, Plaintiff again saw Dr. Caton for his knees and left hip. Dr. Caton reported that x-rays taken of Plaintiff's hip showed only mild degenerative changes and Plaintiff's hip motion was good without appreciable pain. Examination of the knees showed that they were tender and painful, but "not aggressively so." Plaintiff agreed to injections. AR 266-67. In July 2015, Plaintiff reported that the injections lessened his pain and discomfort. On examination, Plaintiff had palpable crepitus and decreased motion, but was "still able to get around and do activities of daily living." AR 263-64. In August 2015, Plaintiff complained of bilateral knee pain and had palpable crepitus of the left knee. However, Dr. Caton indicated that Plaintiff was "still able to get around fairly well and able to do activities of daily living without significant problems, although some days he apparently has more difficulty than others." AR 261. Plaintiff was not in a rush for an injection. AR 262.

In addition to citing records demonstrating Plaintiff's ability to ambulate and perform his activities of daily living, the ALJ cited records expressly noting that Plaintiff's physical examinations were within normal limits despite complaints of pain. AR 32. For instance, the ALJ referenced Plaintiff's annual physical exam in September 2014 during which Plaintiff complained of low back pain, but his physical examination was within normal limits. AR 32, 294-96. The ALJ also cited Plaintiff's treatment in December 2014 during which Plaintiff complained of pain on his left side, but the physical examination also was within normal limits. AR 32, 297-99. Additionally, the ALJ cited and considered that in July 2015, Plaintiff was seen for bilateral knee problems, "but he [was] still able

8

to get around and do activities of daily living." AR 32, 263. Further, the ALJ cited treatment records dated after August 2015, which demonstrated that Plaintiff's physical examination were within normal limits. AR 32, 304-13. These records included an examination on September 1, 2015, by Dr. Mattice Harris, Plaintiff's treating physician, which demonstrated that Plaintiff had no spinal tenderness, normal spine range of motion, normal range of motion with no joint crepitus or pain on motion in his bilateral lower extremities, with normal strength and tone. AR 304-06. These records also included an examination by Dr. Harris on September 29, 2015, which demonstrated that Plaintiff had no spinal tenderness or misalignment and no findings of abnormalities in his lower extremities. AR 311-13.

The Court concludes that the medical records cited by the ALJ provide support for the related findings regarding Plaintiff's functional abilities.

As a final matter, Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons to reject the opinion of Plaintiff's treating doctor, Dr. Harris. On January 13, 2016, Dr. Harris completed a Questionnaire and opined that Plaintiff had medical problems precluding him from performing any full-time work at any exertion level, including sit down. AR 314. Dr. Harris identified Plaintiff's primary impairment as chronic low back pain, with tenderness in the L-spine region bilaterally and decreased range of motion. Dr. Harris indicated that Plaintiff could lift and carry 15 pounds, could sit for 1-2 hours at a time, and could stand and/or walk 1-2 hours at time. Dr. Harris also indicated that over an 8-hour period, Plaintiff could sit for 1-2 hours and stand and/or walk 1-2 hours. Additionally, Dr. Harris reported that Plaintiff must frequently change positions and cannot stand or walk for more than 1-2 hours at a time. Dr. Harris opined that Plaintiff had been disabled to this degree since 2009. AR 314.

In assessing the opinion of Dr. Harris, the ALJ stated as follows:

I have given no weight to the opinion [of] Mattice F. Harris, MD; Dr. Harris completed *Questionnaire* on behalf of the claimant in January 2016 (Exhibit 6F). Dr. Harris opined that the claimant suffers from multiple exertional and nonexertional limitations that preclude him from completing an 8-hour workday or a 40-hour workweek (*Id*). Dr. Harris indicated that the claimant's "medical problems preclude him from performing any full-time work at any exertional level" and state that his onset of limitations was in 2009 (*Id*). However, the record indicates that Dr. Harris only treated the claimant in September 2015 (Exhibit 5F). Additionally, as discussed above, there is no evidence to support an onset of *any* exertional limitations prior to 2014 (Exhibits 4F and 5F). Lastly,

9

Dr. Harris's opinion is inconsistent with the claimant's testimony regarding his ability to perform activities of daily living (Hearing Testimony). These inconsistencies make Dr. Harris's opinion unreliable and thus, I have given his opinion no weight.

AR 35.

As indicated above, Plaintiff asserts that the ALJ improperly rejected Dr. Harris's opinion. The Court disagrees. Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* Here, Dr. Harris's opinion arguably was not contradicted by another physician.[4] The ALJ therefore was required to provide clear and convincing reasons to discount Dr. Harris's opinion.

The Court finds that the ALJ provided clear and convincing reasons to assign no weight to Dr. Harris's opinion. First, the ALJ properly discounted Dr. Harris' opinion rendered in January 2016 because the medical records reflected that Dr. Harris had only treated Plaintiff in September 2015. AR 35. When analyzing a treating physician's opinion that has not been given controlling weight, an ALJ properly must "consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). Thus, the ALJ appropriately considered the length, frequency, nature and extent of the treatment relationship between Plaintiff and Dr. Harris, which was limited to one month and two visits in September 2015.

---

[4] The state agency medical consultants assessed Plaintiff's RFC in April 2014 and July 2014. AR 88-89, 98-99. However, as the ALJ noted, they "did not have the opportunity to review the medical evidence regarding the claimant's orthopedic impairments." AR 34.

Second, the ALJ properly discounted Dr. Harris' opinion regarding the alleged onset of any disabling condition or exertional limitations because that opinion was unsupported by the record. AR 35. An "ALJ need not accept an opinion of a physician-even a treating physician-if it is conclusory and brief and is unsupported by clinical findings." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Dr. Harris opined that Plaintiff's allegedly disabling condition and exertional limitations began in 2009. AR 314. However, as the ALJ correctly found, Plaintiff presented no medical evidence to support a disabling orthopedic condition or exertional limitations beginning as early as 2009. Plaintiff himself alleged disability beginning in 2011 [AR 178, 196, 200], and his orthopedic-related treatment records are dated 2014 and 2015 [AR 261-72, 273-313]. Critically, Plaintiff's own work history belied any disabling condition beginning in 2009. See AR 190-91, 195 (Plaintiff worked at the substantial gainful level in 2009, 2010 and 2011). Further, Dr. Harris' treatment records from September 2015 reflected only normal orthopedic findings on examination, and did not provide any basis for the extreme exertional limitations in his January 2016 opinion. AR 304-06, 311-13.

Finally, the ALJ rejected Dr. Harris' opinion regarding exertional limitations because that opinion was inconsistent with Plaintiff's own testimony regarding his activities of daily living. AR 35. An ALJ may properly discount a treating doctor's limitations where those limitations appear to be inconsistent with the claimant's activity level. *See*, *e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding ALJ provided adequate reasons for rejecting treating physician's opinion, including where the physician's restrictions appeared to be "inconsistent with the level of activity that [the claimant] engaged in"). Here, Dr. Harris opined that Plaintiff could stand and walk for a total of no more than two hours during an eight-hour workday. AR 314. In contrast, the ALJ noted that Plaintiff testified to performing household chores, such as vacuuming, sweeping, and washing dishes, going for half hour walks and cooking. AR 33, 50-52. These activities appear inconsistent with Dr. Harris' extreme exertional limitations.

////
////
////
////

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Ronny Melton.

IT IS SO ORDERED.

Dated: **February 15, 2019**           /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE